## NEBRASKA NATL. BANK OF OMAHA v. LOGAN & STANTON.

### [FILED JULY 2, 1892.]

**Banks:** CHECKS: DISHONOR: DILIGENCE. On Friday, November 16, 1888, the firm of L. & S., of V., Nebraska, drew a check on the State Bank of V., in which they had funds, in favor of M. B. & Co., of O., in this state, and transmitted the same by mail to M. B. & Co. at O. In the letter which contained the check were the words in red ink: "Rush this check through." The check was received by M. B. & Co. on Saturday after its date and by them indorsed and delivered to the Nebraska National Bank for its face value, and without notice to rush the check. The bank at O. had previously had dealings with the State Bank at V. and had found it more prompt in remitting collections than the other banks at that place, and it at once sent the check to the bank on which it was drawn for payment. It was received on Monday morning after its date and on the next day the State Bank transmitted to the Nebraska National a draft on a bank in L., where it had no funds, which check was refused, of which the drawers were duly notified. On Tuesday night after the date of the check the bank at V. stopped payment, and the officers absconded, leaving no money or property of the bank. *Held,* That the Nebraska National Bank had shown reasonable diligence and had acted in good faith and that L. & S. were liable as drawers of the check.

ERROR to the district court for Douglas county. Tried below before HOPEWELL, J.

*Morris & Beekman,* for plaintiff in error, cited: *Titus v. Merchants Bank,* 35 N. J. L., 588; *Russell v. Hankey,* 6 Term Rep. [Eng.], 12; *Griffin v. Rice,* 1 Hilt. [N. Y.], 184; *People v. Merchants Bank,* 78 N. Y., 269; *Fonner v. Smith,* 31 Neb., 107; *Freeholders v. State Bank,* 32 N. J. Eq., 467.

*E. G. B. McGilton, contra,* cited: *Allen v. Bank,* 22 Wend. [N. Y.], 215; *Shriessguth v. Bank,* 44 N. W. Rep.

[Minn.], 797; *Exchange Bank v. Third Natl. Bank*, 112
U. S., 276; *Reeves v. Bank*, 8 O. St., 465; *Simpson v. Waldby*, 30 N. W. Rep. [Mich.], 199; *Titus v. Merchants Bank*, 35 N. J. L., 588; 1 Dan., Neg. Inst., sec., 243; *Commercial Bank v. Union Bank*, 11 N. Y., 203; *Ger. Natl. Bank v. Burns*, 21 Pac. Rep. [Cal.], 714; *Merchants Natl. Bank v. Goodman*, 109 Pa. St., 422; Morse, Banking, sec. 236; *Drovers Bank v. Provision Co.*, 117 Ill., 100; *Forbes v. Bank*, 10 Neb., 338; *Smedes v. Bank*, 20 Johns. [N. Y.], 372; *Bowling v. Harrison*, 6 How. [U. S.], 248; *Van Vechten v. Pruyn*, 13 N. Y., 549; *Smith v. Miller*, 43 Id., 171; Morse, Banking, secs. 421 *d* and *f*.

MAXWELL, CH. J.

The petition in this case was submitted on demurrer in the year 1890 and the petition sustained. In that case the demurrer was overruled and the cause remanded for further proceedings, it being held that if the facts stated in the petition were true the plaintiff had shown due diligence and was entitled to recover. (*Bank v. Logan*, 29 Neb., 278.) Upon the case being remanded, an answer was duly filed by the defendants Logan & Stanton, to which a reply was made. No answer appears to have been filed by McCord, Brady & Co., and on the trial of the cause the case was dismissed by the plaintiff as to them. The parties entered into a stipulation as to the facts as follows:

"It is agreed by the parties hereto that a jury is waived, that this action shall be submitted to the court upon this agreed statement of facts, and that no further evidence shall be introduced, but judgment shall be rendered upon this statement of facts, which the parties agree are all the facts involved in the transaction which is the subject of this action, and which is as follows:

"On Friday, November 16, 1888, the defendants Logan & Stanton, at Valparaiso, Nebraska, drew their check as a copartnership for the sum of $481.75, payable to the order

of McCord, Brady & Co., upon the State Bank of Valparaiso, located at Valparaiso, Nebraska, about seventy miles. from Omaha, Nebraska, which check reached McCord,. Brady & Co. on Saturday, the 17th day of November,. 1888, and on the same day the said McCord, Brady & Co. sold and delivered the same by indorsement to the plaintiff,. who paid the full amount thereof to said McCord, Brady & Co. On the said Saturday, the 17th day of November,. 1888, plaintiff sent said check by mail to the State Bank. of Valparaiso with instructions to remit the amount thereof to the plaintiff, which said check was received by the said. drawee bank on Monday morning, November 19, 1888.. On Tuesday, November 20, 1888, said drawee bank sent to plaintiff a worthless draft on the German National Bank. of Lincoln for the amount of said check, said drawee bank having no funds in the German National Bank of Lincoln.. Said draft being received by the plaintiff on Wednesday,. the 21st of November, 1888, plaintiff refused to accept. said draft, having on that day learned of the failure of said. drawee bank, and being notified by telegraph from the German National Bank that said drawee bank had no funds to. meet said draft. Plaintiff notified said Logan & Stanton. on the 22d day of November, 1888, of the non-payment. of said check, and that plaintiff, as holder of said check, would look to them for the payment of the same and demanded payment thereof. The defendants Logan & Stanton drew said check and prepared the letter of remittance on, said 16th day of November, 1888, just before the time for the departure of the mail for Omaha, between which time. and the mailing of the same the circumstance arose which aroused a suspicion in their minds as to the solvency of the. drawee bank and in the short time left before the mail was. due to leave Valparaiso they had time only to write in red ink across the letter of remittance, 'Rush this check. through,' which they did write on the letter of remittance..

"The suspicious circumstance referred to was this: The

said Logan & Stanton received advices from New York that one of the drawee's drafts had gone to protest. Immediately, but after the mail had left for Omaha, an explanation was demanded by Logan & Stanton from the officers of the bank, which explanation was satisfactory to Logan & Stanton, they being informed that the drawee bank had changed its bank of deposit in New York, the dishonored draft having been presented at the New York deposit bank a few hours before the change in deposit had been effected. The said McCord, Brady & Co. did not communicate to the plaintiff the advice given them in the letter of remittance from Logan & Stanton.

"The said drawee bank continued in business and honored all checks presented over the counter during Monday and Tuesday, the 19th and 20th of November, 1888. Logan & Stanton had funds sufficient on deposit to their credit with the said bank to meet the check on said days. Other checks were presented over the counter drawn by Logan & Stanton on said days.

"There was another bank in the village of Valparaiso to which said check might have been sent for presentment and collection, but plaintiff had theretofore had business dealings with both banks in Valparaiso and had found the State Bank of Valparaiso, the drawee of said check, the more prompt in remitting collections.

"At the close of business on Tuesday, the 20th of November, 1888, the drawee bank closed its doors, became insolvent, and never again resumed business, the officers thereof fled to parts unknown, taking all available funds, including the funds of these defendants on deposit for the purpose of meeting said check, leaving no property, real or personal."

On this statement of facts the court below found for the defendant and dismissed the action.

The statement of facts is very unsatisfactory. It is sought to charge the plaintiff with negligence in sending

the check to the drawee with the request to remit. It seems that it had had some experience with the banks at Valparaiso and had found the drawee bank more prompt in making remittances than the other. The plaintiff would seem, therefore, to have acted in good faith in transmitting the check to that bank.

Upon the agreed statement of facts it is conceded that a draft in favor of the defendants by the Valparaiso bank had gone to protest in New York city a day or two before the check in question was drawn. That the defendants believed there was danger of the bank's insolvency is shown by the words written in their letter to McCord, Brady & Co., "to rush this check through." The only construction that can be placed upon these words is that they believed the insolvency of the bank was imminent. Their explanation that the Valparaiso bank had changed its correspondent at New York is far from satisfactory, particularly as there is no statement that funds had been provided with the new correspondent in that city to meet the defendants' draft. So in regard to what checks were drawn from the Valparaiso bank on Monday and Tuesday preceding the failure.

The case amounts to this: The defendants had notice of facts which would indicate that the Valparaiso bank was about to stop payment. The plaintiff had no such notice. It can scarcely be said, therefore, that the parties were on an equality, or that the check if presented by a third party on Monday and the cash demanded would have been paid. So far as we can see, the insolvency of the bank was apparent to the defendants when the check was drawn, and there must have been some reason not stated in the stipulation why the check was not drawn in their favor and presented by the defendants themselves and their funds withdrawn. We need not speculate upon the reason for such failure, but the agreed statement is not sufficiently definite as to the condition of the bank on Monday and

Tuesday to warrant us in holding that the check if pre-
sented by a third party on either of those days would
have been paid in cash. The judgment of the district
court is reversed and the cause remanded for further pro-
ceedings.

REVERSED AND REMANDED.

THE other judges concur.